**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul H. "Bud" HOLMES,
Defendant-Appellant.**

No. 86-4048.

United States Court of Appeals,
Fifth Circuit.

July 7, 1987.

---

James K. Dukes, Hattiesburg, Miss., Patrick Fanning, New Orleans, La., for defendant-appellant.

Reid Weingarten, Public Integrity Section, Criminal Div., Jan Nielsen Little, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, RUBIN, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Paul H. ("Bud") Holmes challenges the legality of a one-year sentence of imprisonment that, together with a fine

of $10,000, was imposed pursuant to his plea of guilty to and consequent conviction of contempt under 18 U.S.C. § 401(1). Holmes contends that the contempt statute does not authorize both imprisonment and a fine for a single offense, but instead only permits a court to impose as alternative sentences either a fine or imprisonment, and not both. Appellant's position is that he fully satisfied his sentence by paying the fine, and that he cannot now be required to undergo imprisonment.

The government contends that the sentence was proper because appellant was convicted of two or more contempt offenses. However, we determine that appellant was charged with, pleaded guilty to, and was convicted of only a single offense of contempt, and that hence under section 401 he could not be sentenced to both a fine and imprisonment, although he could have been sentenced to either. We also reject the government's alternative contention that 18 U.S.C. § 3623, taken together with section 401, authorized imposition of both a fine and imprisonment for a single offense under section 401. Therefore, we hold, pursuant to *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943), that appellant, since he has fully paid his fine, must be discharged from his sentence of imprisonment.

## I.

Appellant was originally charged in a five-count indictment returned March 29, 1985 in the United States District Court for the Southern District of Mississippi, Hattiesburg Division. Count I of the indictment charged appellant with attempting to interfere with or impede the investigation of the federal grand jury in the Hattiesburg Division by various actions in 1984

and 1985, contrary to 18 U.S.C. § 1503, and Counts II through V charged him with perjury in his testimony before the same grand jury on various dates in 1984 and 1985, contrary to 18 U.S.C. § 1623. The indictment alleged that the grand jury was investigating allegations of official corruption in the Southern District of Mississippi, and as a part of that investigation was examining, among other things, the circumstances of the transfer of mineral royalty interests from Wiley Fairchild, a Hattiesburg businessman, to United States District Judge Walter Nixon, and the handling by appellant, in his then capacity as state district attorney in that area, an office he held from January 1980 to January 1984, of a drug smuggling case involving Wiley Fairchild's son, Drew Fairchild, which arose out of an August 1980 arrest at the Hattiesburg airport. The subject matter of Count I was the allegation that appellant sought to keep the grand jury from learning about a 1982 telephone call from appellant's farm to Wiley Fairchild in which appellant and Judge Nixon assured Wiley Fairchild that the drug smuggling case against his son, Drew Fairchild, would be resolved by appellant to Wiley Fairchild's satisfaction. The other counts in the indictment did not relate to this telephone conversation with Wiley Fairchild, or indeed to any other contact with him.[1]

The same day the indictment was returned, appellant was arraigned, entered a plea of not guilty, and was released on bond.

On June 18, 1985, just as appellant's trial on this indictment was beginning (though apparently the jury had not yet been impaneled), appellant entered into a plea agreement with the government, pursuant to which he pleaded guilty to an informa-

---

**1.** Count II alleged perjury in appellant's July 20, 1984 grand jury testimony respecting whether he met with *Drew* Fairchild shortly after the August 1980 drug arrest and before Drew's resulting state indictment and at that meeting asked Drew if he had any money for the case. Count III alleged perjury in appellant's September 5, 1984 grand jury testimony respecting whether he sought to take control of the Drew Fairchild case from the U.S. Attorney's office in Jackson, Mississippi and from the Mississippi

Bureau of Narcotics agents who were working with the federal authorities on that case. Count IV alleged perjury in appellant's February 21, 1985 grand jury testimony regarding his conversations with Bill Burgin respecting Burgin's criminal case which was then pending before Judge Nixon. Count V alleged perjury in appellant's February 21, 1985 grand jury testimony regarding his contacts with Leonard Melvin respecting Melvin's then pending civil case before Judge Nixon.

tion charging him with contempt under section 401(1), and the government agreed to dismiss the indictment against him. The agreement also called for appellant to give complete and truthful testimony to the United States at interviews, before the grand jury, and at trial, and the United States agreed to make known to the court at sentencing any cooperation provided by appellant. On the same day, appellant filed a waiver of indictment, the court allowed the information to be filed and, after the appropriate hearing under Fed.R.Civ.P. 11, accepted appellant's plea of guilty to the information and entered a judgment of guilty on appellant's plea. Appellant was continued on bond.[2]

On December 11, 1985, Holmes appeared before the district court for sentencing. The court imposed a sentence of a $10,000 fine and one year in prison. The court granted appellant's motion that he be allowed to self-surrender, and directed that appellant report to his designated place of confinement on February 18, 1986, to commence the service of his sentence to imprisonment. The court also imposed a $50 special assessment pursuant to 18 U.S.C. § 3013. Then, on the government's motion, the court ordered the indictment dismissed.

Later in the day on December 11, 1985, after he was sentenced, appellant promptly tendered the $10,000 fine in full to the deputy clerk of the United States District Court in Hattiesburg, which the clerk thereupon accepted and receipted for. Appellant paid the $50 special assessment the

following day. On December 17, appellant filed a Rule 35(a)[3] motion to vacate as illegal that part of his sentence ordering imprisonment. The district court denied that motion on January 2, 1986, holding that imposing both a fine and imprisonment was proper because appellant had pleaded guilty to more than one act of contempt and that, even if the information were to be construed as charging only one contempt, the prison sentence was lawful in any event because only the prison term was based on the contempt statute and the imposition of a fine was a proper additional sentence under 18 U.S.C.A. § 3623, an "alternative fines" provision. Holmes appeals the denial of his Rule 35 motion to vacate the prison sentence.[4]

## II.

■ We emphasize at the outset that the only issue before this Court is the district court's denial of appellant's Rule 35 motion to correct his sentence by vacating what he contends is the illegal imprisonment portion thereof. Appellant does not challenge his guilty plea or conviction or any of the procedures leading thereto. The question presented is whether the punishment ordered by the court comports with the governing statutes.[5]

The issues presented by appellant, stated in the order this opinion addresses them, are: (1) whether both a fine and imprisonment can be imposed under the authority of section 401 for a single contempt of-

2. As reflected in the opinion in *United States v. Nixon,* 816 F.2d 1022 (5th Cir.1987), Judge Nixon was indicted and tried on one count of accepting something of value respecting an official act (18 U.S.C. § 201(g)) and three counts of perjury in grand jury testimony, was acquitted as to the section 201(g) count and one of the perjury counts, and was convicted on two of the perjury counts involving his testimony concerning his relationship to the Drew Fairchild case and whether appellant ever discussed it with him. Appellant testified as a government witness in that case concerning, among other things, the 1982 telephone call from his farm to Wiley Fairchild in which appellant and Juage Nixon participated and discussed the Drew Fairchild case. *Nixon,* 816 F.2d at 1029.

3. Rule 35(a), Fed.R.Crim.P., as currently in effect (it has been amended effective November 1, 1987), provides: "The court may correct an illegal sentence at any time...." Appellant contends that his case involves an "illegal sentence."

4. Following Holmes' notice of appeal from the denial of his Rule 35 motion, the district court on January 27, 1986 suspended execution of Holmes' sentence during the pendency of this appeal.

5. This is purely a question of law, and the district court's denial of the motion is freely reviewable by this Court. *See* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 588 at 415 (1982); *see also id.* §§ 582–584 (discussing motion to correct an illegal sentence).

fense; (2) whether he was convicted of, charged with, and pleaded guilty to only one contempt offense; (3) whether section 3623 provided independent authority for the district court's imposition of the fine in addition to the prison term; and (4) whether, if the foregoing issues are resolved in appellant's favor, his payment of the fine precludes his hereafter being resentenced to imprisonment without a fine.

### A. The disjunctive language of section 401

■ The contempt statute is one of only a very few provisions in Title 18 that allow a court to impose either a fine or imprisonment but not both.[6]

The government does not ask that we read section 401 in any way contrary to its plain language and concedes that only a fine or imprisonment may be imposed for a single contempt offense under section 401 alone, without reference to section 3623. This reading of the statute is consistent with that of the Supreme Court[7] and the Circuit Courts,[8] and we follow and apply that long-standing disjunctive interpretation. Therefore, by the terms of section 401, for each offense thereunder the court may impose a fine or imprisonment, but the imposition of both is forbidden as to any one offense.

### B. A single offense of contempt

We turn now to the government's argument that appellant was convicted of multiple offenses under section 401. We reject this contention, as our review of the proceedings below compels the conclusion that appellant was charged with and pleaded to only a single contempt offense, and was convicted and sentenced accordingly.

As above-indicated, the indictment against appellant plainly charged him with five distinct offenses, each in a separately numbered count. Pursuant to the plea agreement, however, Holmes pleaded guilty to an information, and the government dismissed the indictment. The information reads as follows:

"INFORMATION

"The United States of America, acting through its undersigned attorney, charges that:

"1. From on or about July 18, 1984, and continuing through March, 1985, in the Southern District of Mississippi, the Defendant, PAUL H. 'BUD' HOLMES, acting unlawfully, willfully and knowing-

---

6. The applicable portion of section 401 provides:
 "A court of the United States shall have power to punish by fine *or* imprisonment, at its discretion, such contempt of its authority, and none other, as—
 "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice...." 18 U.S.C. § 401 (emphasis added).
 In marked contrast to section 401, 18 U.S.C. § 402 defines *criminal* contempt and authorizes the imposition of "fine or imprisonment, *or both*" (emphasis added).
 Our partial survey of Title 18 (section 1 to section 1992), discloses that the vast majority of criminal statutes allow a court to impose imprisonment, a fine, "or both." We found only two statutory provisions in addition to section 401 that allow the alternative punishments of prison or a fine without "or both" language. *See* 18 U.S.C. § 1705 (destruction of letter boxes or mail: "shall be fined not more than $1,000 or imprisoned not more than three years"); § 1916 (unauthorized employment or disposition of lapsed appropriations: "shall be fined not more than $1,000 or imprisoned not more than one year"). Some sections provide only for a fine,

e.g., § 432 (government employee contracting with a member of Congress); § 475 (imitating securities or obligations); § 489 (making or possessing likenesses of coins). A somewhat larger number of sections provide only for imprisonment or death, *e.g.,* § 794(a) (gathering or delivering defense information to aid a foreign government); § 1111 (murder); § 1114 (murder and attempted murder of federal officials); § 1116 (murder or manslaughter of foreign officials); § 1201 (kidnapping); § 1203 (hostagetaking); and §§ 1651, 1652, 1658(b), 1660 (various piracy provisions).

7. *E.g., Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 642, 2 L.Ed.2d 672 (1958) (stating that the word "or" in section 401 means that "the court must choose between fine and imprisonment"); *In re Bradley,* 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 680 (1943).

8. *E.g., United States v. Hilburn,* 625 F.2d 1177, 1181 & n. 4 (5th Cir.1980); *United States v. DiGirlomo,* 548 F.2d 252, 254 (8th Cir.1977); *United States v. Miller,* 540 F.2d 1213, 1214 (4th Cir.1976); *United States v. Sampogne,* 533 F.2d 766, 767 (2d Cir.1976).

ly, did commit acts of misbehavior in the presence of the Grand Jury empaneled in the Hattiesburg Division of the Southern District of Mississippi, convened upon the Order of and acting under the supervision of the United States District Court for the Southern District of Mississippi, and did commit acts of misconduct so near to said Grand Jury and said Court as to obstruct the administration of justice. In this regard, the Defendant, PAUL H. 'BUD' HOLMES,

"(a) inquired of others whether they had discussed a telephone call with federal authorities so as to be able to tailor his own grand jury testimony;

"(b) testified falsely in the grand jury on February 21, 1985, that the reason he did not advise the grand jury about the aforementioned telephone call previously was 'it did not come across my mind ...'

and he 'didn't put any significance to it;' and

"(c) refused to disclose the substance of the aforementioned telephone call when on February 21, 1985, he falsely testified before the grand jury that he could not remember what was said during the call;

"with all said acts done by the Defendant, PAUL H. 'BUD' HOLMES, to manipulate and interfere with the grand jury investigation by preventing the grand jury from receiving relevant evidence.

"In violation of Title 18, United States Code, Section 401(1)."

In all significant respects, the substantive content and most of the actual language of the information are derived entirely from Count I of the indictment, quoted in pertinent part in the margin.[9] All these acts

---

**9.** Those sections of the first count of the indictment that were repeated in the information are indicated by the emphasized language below; those sections not included in the information are quoted without emphasis or are summarized within brackets:

"INDICTMENT
"The Grand Jury charges:
"COUNT I

"1. At all times material to this Indictment ... [identifying Holmes, Nixon, and Wiley and Drew Fairchild, and Drew's implication in the 1980 drug smuggling arrest at the Hattiesburg airport].

"2. [Identifying the grand jury and describing it as investigating reports of official corruption, including the mineral royalty transfer from Wiley to Nixon, and Holmes' handling of Drew's drug smuggling case].

"3. [Stating that it was material to the grand jury to learn whether Holmes manipulated Drew's case as a result of his relationships with Nixon and Wiley].

"4. [Stating that it was material to the grand jury to know whether (a) Holmes discussed Drew's case with Wiley, (b) Holmes discussed the case with Nixon after the mineral royalty transfer, and (c) Nixon discussed the case with Wiley after the mineral royalty transfer].

"5. From on or about July 18, 1984, and continuing through March 1985, in the Southern District of Mississippi, the Defendant, PAUL H. 'BUD' HOLMES, acting unlawfully, willfully and knowingly, did corruptly influence, obstruct and impede and did endeavor to influence, obstruct and impede the due administration of justice, in that during the aforesaid period of time the Defendant, PAUL H. 'BUD' HOLMES, prevented and endeav-

ored to prevent the grand jury from learning about a telephone call made in the latter part of 1982 from the farm of the Defendant, PAUL H. 'BUD' HOLMES, to Wiley Fairchild wherein Judge Nixon and the Defendant, PAUL H. 'BUD' HOLMES, assured Wiley Fairchild that his son's drug case would be resolved to Wiley Fairchild's satisfaction by the Defendant, PAUL H. 'BUD' HOLMES. In this regard, the Defendant, PAUL H. 'BUD' HOLMES:

"*(a) inquired of others whether they had discussed* the aforementioned *telephone call with federal authorities so as to be able to tailor his own grand jury testimony;*

"(b) testified falsely in the grand jury on July 20, 1984, that he had no contact with Wiley Fairchild about the drug smuggling case involving Drew Fairchild after Drew Fairchild was indicted in August 1981;

"*(c) testified falsely in the grand jury on February 21, 1985 that the reason he did not advise the grand jury about the aforementioned telephone call previously was* that '*it did not come across my mind ...*' and he '*didn't put any significance ... to it;*'

"*(d) refused to disclose the substance of the aforementioned telephone call when on February 21, 1985, he falsely testified before the grand jury that he could not remember what was said during the call;* and

"(e) sought to influence a witness, whom he knew was to testify in the grand jury about the aforementioned call, to testify in a way that would be favorable to the Defendant, PAUL H. 'BUD' HOLMES;

"*with all said acts done by the Defendant, PAUL H. 'BUD' HOLMES, to manipulate and interfere with the grand jury investigation by*

alleged in the information, it is clear, are almost verbatim the same as three of the five acts identified by the indictment as constituting the *single* offense charged by Count I. If Count I of the indictment alleged but a single offense, as it obviously did, then it is likewise clear that the information also charged but one offense. In the information, moreover, a "1" appears at the beginning, but there is no "2" or "3." Further, the three acts constituting contempt are all alleged in a single sentence, each of the three being subject to a single concluding clause of that sentence which characterizes them as having been done to manipulate the grand jury investigation. And, there is a single, concluding "in violation of" allegation.

██ On its face, the information appears to charge only a single offense and to specify three acts done by appellant as the means whereby the offense was accomplished. Several additional factors tend to support this conclusion. First, it is not clear that appellant could have been convicted of section 401(1) contempt *merely*

for "inquir[ing] of others whether they had discussed a telephone call with federal authorities so as to be able to tailor his own grand jury testimony," as the information alleges in clause (a), because these acts may not have occurred in the presence of the court "or so near thereto as to obstruct the administration of justice." [10] Second, the form of the information suggests only a single charge, especially when pertinent provisions of the Federal Rules of Criminal Procedure are considered. Unlike the last four counts of the indictment, each of which charges a separate single violation of the same statute and each of which specifically alleges that same statute, the information mentions the statute violated only once and does not plainly and definitely identify separate and multiple counts.[11]

██ Third, although clauses (b) and (c) allege acts that might support separate contempt charges,[12] the issue is not whether the acts alleged might have been charged as separate offenses, but whether they were in fact so charged. On this point, our decision in *Carter v. United*

---

*preventing the grand jury from receiving relevant evidence.*

"*In violation of Title 18, United States Code, Section* 1503.

"COUNT II

"...."

**10.** The government's offer of proof at the Rule 11 hearing reflects that the inquiries alleged in clause (a) occurred when Holmes asked others about their conversations with the Federal Bureau of Investigation or "the Government." From the context, it is evident that Holmes' inquiries were not made in the presence of the grand jury. Although it is stated that the inquiries were made "after the Grand Jury investigation that led to the indictment against Mr. Holmes was begun in the summer of 1984," nothing is stated suggesting that those inquired of had then testified, or been selected to testify, before the grand jury, or intended to do so, or that the inquiries asked about that; nor is it suggested that the inquiries were made in close physical proximity to the grand jury.

**11.** Rule 7(c)(1), Fed.R.Crim.P., states (emphasis added):

"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offerse charged..... *It may be alleged in a single count that ... [the defendant] committed [the offense] by one or more specified means. The*

*indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.*"

Rule 8(a), Fed.R.Crim.P., provides (emphasis added):

"**Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information *in a separate count for each offense.....*"

**12.** At the Rule 35 motion hearing, the district court indicated that it viewed Holmes' plea as based on two contempts, one outside of the presence of the grand jury (clause (a)) and one in the presence of the grand jury (clauses (b) and (c)). The Supreme Court has held that perjury *alone*—without additional acts obstructing justice or otherwise contemptuous—during *trial* was not punishable by a court's contempt power. *See In re Michael,* 326 U.S. 224, 66 S.Ct. 78, 79 n. 1, 79–80, 90 L.Ed. 30 (1945). The Court expressly reserved whether one can be punished for contempt for giving perjured testimony before a grand jury. *In re Michael,* 66 S.Ct. at 80. We have held that grand jury perjury may constitute contempt. *United States v. Griffin,* 589 F.2d 200, 205 (5th Cir.) (perjury which obstructs the administration of justice by "closing off avenues of inquiry entirely"), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979).

*States,* 135 F.2d 858, 864 (5th Cir.1943), is plainly controlling and requires us to reject the government's multiple offenses argument. To the same effect is *United States v. Berardi,* 675 F.2d 894, 897–88 (7th Cir. 1982). *Cf. United States v. Hilburn,* 625 F.2d 1177 (5th Cir.1980) (involving multiple acts that resulted in only a single contempt charge and conviction); *United States v. Barnette,* 546 F.2d 187 (5th Cir.) (same), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977). If the information had charged these acts as separate contempt offenses, and if appellant had pleaded guilty to an information so framed, different and cumulative penalties for each offense could have been imposed. *E.g., Rapp v. United States,* 146 F.2d 548 (9th Cir.1944) (six different violations of an injunction); *Hoffman v. United States,* 13 F.2d 278 (7th Cir.1926) (distinct violations of two different commitment orders). But that is not the case here, and we are governed by *Carter.*

■ An additional indication that only a single offense of contempt was charged is that the district court imposed only a single sentence, and did not purport to, for example, impose a fine respecting the allegations of clause (a) and imprisonment respecting the allegations of clauses (b) and (c). If the court's sentence was not imposed as a sentence for a single contempt offense, there is absolutely no way to tell what sentence was imposed on which assertedly separate contempt.[13] The experienced district judge was, we must presume, well aware that it had long been the law of this Circuit that distinct and separate sentences must be expressly imposed on each separate offense of which the accused is convicted, and that it is wholly improper to impose a single, general sentence covering two or more separate offenses. *Benson v. United States,* 332 F.2d 288, 291–92 (5th Cir.1964).

Other aspects of the proceedings below likewise reflect that only a single contempt offense was charged.

The plea agreement described appellant's offense as "the crime of contempt," did not address the imposition of both a fine and prison, and appears to have contemplated only *one* possible prison term, all of which support the inference that both the government and appellant viewed the information as charging a single offense. The agreement provided (emphasis added):

"The Defendant, PAUL H. 'BUD' HOLMES, will plead guilty *to the crime* of contempt. . . .

"....

"... [T]he United States and the Defendant ... agree that should the Court decide to impose *a term* of imprisonment, *a sentence* of no more than one year's imprisonment would be an appropriate disposition of the case."

We further note from the transcripts of both the plea and sentencing hearings that appellant, the government, and the district judge appeared to contemplate only one conviction for one offense.

The following exchange occurred when appellant entered his plea on June 18, 1985 (emphasis added):

"MR. FANNING [appellant's attorney]: ... *Mr. Holmes will enter a plea to something other than a felony* and the Government will in exchange dismiss the five felony counts of the indictment.

---

13. The court's pronouncement of sentence merely states, "I sentence you to serve one year in the custody of the Attorney General, impose a fine of $10,000 and a special assessment. . . ." No reference was made to different acts or offenses of contempt or to separate sentences. The judgment and commitment order reflect merely: "VIO: 18 U.S.C. 401(1)" respecting the "offense(s)" (the preprinted words of the form); and that the court "adjudged the defendant guilty as charged. . . . The defendant is hereby committed ... for imprisonment for a period of One (1) year and fined the sum of $10,000.00."

There is no indication of separate offenses or of a portion of the sentence being for one offense, another portion for another, or the like. Plainly, a *single* sentence was imposed.

Obviously, the same sentence ($10,000 and one year) was not imposed on each of two or three assertedly separate contempts. No one asserts this. It would result in a $20,000 or $30,000 total fine—which no one has contended for—and the court would have had to have specified whether the imprisonment terms were concurrent or consecutive.

"MR. WEINGARTEN [attorney for the United States]: To be specific, Your Honor, we have an information that names Mr. Holmes as the Defendant, and this is an information under 18 USC 401....

" . . . .

"THE COURT [addressing appellant]: Have you discussed with your attorneys *the charge* in the Bill of Information to which you are seeking to plead guilty?

"[Appellant]: I have, your honor.

"THE COURT: [Reading the information] ... and [appellant] did commit acts.... In this regard, the Defendant ... inquired of others ... [t]estified falsely ... [and] refused to disclose....

"Did you, in fact, do *the acts* charged in the Bill of Information?

"[Appellant]: I did, Your Honor.

"THE COURT: Do you understand *the charge* in the Bill of Information?

"[Appellant]: I do, Your Honor.

"THE COURT: The statute under which you are charged ... does not provide for a specified penalty, but leaves it within the discretion of the Court to impose a sentence of a fine *or* imprisonment with no specified limitation in that statute....

" . . . .

"THE COURT: Do you understand *the charge* as I read it to you?

" . . . .

"THE COURT: Are you pleading guilty because you are, in fact, guilty of *the crime* charged?

" . . . .

"THE COURT: What is the Government's evidence[] to *this charge*?

"MR. WEINGARTEN: *If this charge* went to trial, the Government would prove....

" . . . .

"These efforts to obscure and mischaracterize this phone call form the basis of *the contempt charge* found in this information.

" . . . .

"THE COURT [addressing appellant]: Because I find that your plea is knowl-edgeable, voluntary, and has a basis in fact and contains all the elements of *the crime*, I will accept your guilty plea...."

At the time of sentencing, on December 11, 1985, the following exchange occurred (emphasis added):

"[MR. WEINGARTEN]: Before I get to [the sentencing issue] I will like to just briefly set the scene as *the crime* was committed in this case....

"*The crime*, of course, took place in the Grand Jury. Mr. Holmes had been in the Grand Jury a couple of times....

"Mr. Holmes learned that we had come upon the evidence and he knew when he went back into the Grand Jury a third time that he was going to be asked about the phone call. He did three things that he pled to.... [Describing the three acts listed in the information.] He plead to *the crime* of contempt. *Of course it's a unique crime, it's not a felony, it's not a misdemeanor, it's an obstruction offense. Basically what he pled to was preventing the Grand Jury from getting evidence that it was entitled to receive.*

" . . . .

"[THE COURT]: In accordance with and pursuant to the plea agreement entered into, Mr. Holmes, I sentence you to serve one year in the custody of the Attorney General, impose a fine of $10,-000 and a special assessment...."

At the hearing on the motion to vacate the prison sentence on January 2, 1986, after appellant had paid the fine, however, the government urged that "the Court should find a legal, intellectually honest way to preserve the prison sentence." The government advanced three alternative means to that end: first, that the court could view the fine as arising from one contemptuous act and the prison sentence from another, on the theory that the information charged three contempt offenses because it "delineated three specific acts" occurring both "outside and inside the Grand Jury"; second, even if appellant had been found guilty of only one offense, that the court had authority to impose a fine as an additional sentence under section 3623;

and third, that the court could rescind the fine and order the prison sentence served.

The district court denied appellant's motion and adopted the first and second grounds urged by the government and, in addition, stated that the sentence could be corrected at any time before February 18, 1986, but did not rescind the fine.[14]

█ Taken as a whole, the record makes it totally clear that appellant was charged with, pleaded guilty to, and was convicted and sentenced for only a single offense of contempt. Accordingly, we now address the remaining alternatives advanced by the government and relied upon by the district court.

### C. Section 3623: The "alternative fines" provision

The government contends that a provision of the Criminal Fine Enforcement Act, Pub.L. No. 98–596, 98 Stat. 3137, codified at 18 U.S.C.A. § 3623, offers independent authority for the imposition of a fine in addition to a prison sentence ordered under the contempt statute. Section 3623, entitled "alternative fines," applies to offenses committed after December 31, 1984, and in pertinent part provides as follows (footnote added):

"(a) An individual convicted of an offense may be fined not more than the greatest of—

"(1) the amount specified in the law setting forth the offense;

"(2) the applicable amount under subsection (c) of this section [15];

"(3) in the case of a felony, $250,000;

"(4) in the case of a misdemeanor resulting in death, $250,000; or

"(5) in the case of a misdemeanor punishable by imprisonment for more than six months, $100,000."

The interpretation of section 3623 advocated by the government is that, for a single contempt offense, a court can order prison under the contempt statute and a fine—as an additional punishment—under section 3623. That section speaks in the disjunctive, allowing a court to impose a fine "not more than the greatest of" alternatives (a)(1), (a)(2), (a)(3), (a)(4), "or" (a)(5). The government does not clearly claim but we view its argument as suggesting that this power to impose a fine as an additional sentence exists either (1) because

---

**14.** At the close of the Rule 35 hearing, the district court issued its oral ruling, denying the motion on the following grounds:

"It is clear the defendant was charged in the information with three separate acts of contempt which are set forth therein in clear and unambiguous terms. . . .

". . . .

". . . Had the defendant pled guilty to a single act of contempt, the proper sentence under 18 U.S.C. 401 would have been prison only. However, since he plead guilty to what the Court views as one additional contemptuous act, an additional sentence of $10,000 fine was proper. . . .

"Further, it is the opinion of the Court that if it viewed the sentence imposed herein to be illegal, which it does not, under Rule 35 . . . it could be corrected at any time prior to the date it became executory. At the time of the imposition of the sentence the Court suspended the execution thereof until . . . February 18, 1986, and could make any corrections thereto prior to [that] time. . . . Though under no obligation to do so, the defendant chose on a voluntary basis to make a race for the courthouse in Hattiesburg and pay the fine in an effort to escape the prison term. . . .

"Even if the information charged only one contemptuous act, . . . the Court would note

that Title 18 U.S.C. Section 3623 . . . gives the Court authority to impose a fine on a defendant in addition to, and independent of, the authority provided in specified offenses. Hence, the imposition of the sentence to a prison term is authorized by 18 U.S.C. 401, and the sentence to pay a fine by 18 U.S.C. 3623. As a matter of fact, the defendant paid this $50 special assessment imposed by the Court under the authority of 18 U.S.C. 3013 without challenge, which punishes him beyond the limits imposed by 18 U.S.C. 401."

**15.** Subsection (c) of section 3623 provides:

"(c)(1) If the defendant derives pecuniary gain from the offense, or if the offense results in pecuniary loss to another person, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

"(2) Except as otherwise expressly provided, the aggregate of fines that a court may impose on a defendant at the same time for different offenses that arise from a common scheme or plan, and that do not cause separable or distinguishable kinds of harm or damage, is twice the amount imposable for the most serious offense."

subsection (a)(1) permits the imposition of a fine as high as that allowed by section 401 or (2) that the court derives the power to impose a fine from the fact that the punishments possible for contempt are such that the offense is a felony or misdemeanor and thus falls within subsection (a)(3) or (a)(5).[16]

Before examining these alternatives in turn, we set forth principles of statutory construction which the Supreme Court has identified as pertinent to the interpretation of sentencing provisions:

"The first is the oft-cited rule that ' "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." ' ... And the second is the principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence.... [These principles] serve[ ] as 'an outgrowth of our reluctance to increase or multiply punishments absent a clear and definite legislative directive.' " *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980) (citations omitted).[17]

Another settled principle is that "repeals by implication are not favored ... and will not be found unless an intent to repeal is ' "clear and manifest." ' " *Rodriguez v. United States,* — U.S. —, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (per curiam) (citations omitted). A repeal by implication may be inferred if a newly enacted provision presents an irreconcilable conflict with an earlier statute. *Id.*

With these principles of statutory construction in mind, we turn to the language of section 3623, and its relationship to section 401.

### (i) The scope of section 3623

Our review of various statutory provisions of Title 18 indicates that the amount of fines authorized by various offense statutes for some offenses varies significantly despite a similarity of offenses and prison terms authorized by the respective offense statutes,[18] and that, in most cases, section 3623 authorizes fine amounts higher than those provided in the offense statutes. These facts suggest that Congress intended to allow courts to fix on a more consistent basis the amount of fines to be imposed and to permit higher fines to be imposed in the great majority of cases by enacting a broadly applicable statute (instead of amending the offense statutes one at a time). As stated in the House Judiciary Committee Report on the portion of the Criminal Fine Enforcement Act of 1984 which became section 3623, "The maximum fines of present law—except for some of the recently enacted ones and some of the regulatory offenses—are too low to constitute significant punishments for the offense involved.... To the extent that maximum fine levels are increased, the fine becomes a more severe punishment and more attractive as an alternative to prison." H.R.Rep. No. 98–906, 98th Cong. 2nd Sess., 16, *reprinted in* 1984 U.S.Code Cong. & Ad.News 5433 at 5448–49. These purposes are not furthered by holding section 3623 applicable to section 401.

### (ii) Section 401 does not specify an amount of fine within subsection (a)(1)

■ Although section 3623 reflects a congressional purpose of increasing the

---

**16.** Subsections (a)(2) and (4) clearly do not apply. Because there is no allegation of pecuniary gain to Holmes or pecuniary loss to another, and there is only one offense, section 3623(c), *see* note 15, *supra,* is inapplicable, and hence subsection (a)(2), which depends on section 3623(c), is likewise inapplicable. The absence of any allegation of resulting death suffices to rule out consideration of subsection (a)(4).

**17.** *See also* 3 *Sutherland Statutory Construction* §§ 59.03–59.04 (4th ed. 1986) (discussing rule that penal statutes are to be strictly construed).

**18.** For example, setting fire to an aircraft is punishable by up to twenty years in prison and a $100,000 fine, 18 U.S.C. § 32(a)(1); arson involving a dwelling in the territorial jurisdiction of the United States is also punishable by a twenty-year sentence, but only by a $5,000 fine, § 81; setting fire to a vessel, also punishable by a twenty-year sentence, involves a maximum fine of $10,000, § 2275. These variations likely arose from the piecemeal enactment and amendment of various criminal offense provisions in Title 18. Because all three of these arson offenses are felonies, *see* 18 U.S.C. § 1(1), under section 3623(a)(3) a maximum alternative fine of $250,000 would be applicable to each offense.

amount of fines that can be imposed for *most* offenses, subsection (a)(1) makes it clear that fine amounts specified in offense statutes higher than those permitted under subsections 3623(a)(2) through (a)(5) are preserved.[19] Subsection (a)(1) does not mesh so smoothly, however, with the contempt statute, which contains no "amount specified in the law setting forth the offense." Section 401 makes no mention of any amount. Hence subsection (a)(1) would appear to be inapplicable to section 401. We cannot construe subsection (a)(1) as the government urges.

### (iii) Contempt is not a felony or misdemeanor within subsections (a)(3) and (a)(5)

▮ Nor does the language of subsections (a)(3) and (a)(5) clearly apply to section 401. Subsection (a)(3) is applicable only to a "felony," and subsection (a)(5) is applicable only to a "misdemeanor." Yet, the Supreme Court has never characterized contempt as either a felony or a misdemeanor, but rather has described it as "an offense *sui generis." Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966). *See also Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 1506 n. 5, 23 L.Ed.2d 162 (1969) (quoting with approval portion of *Cheff* containing this language). This is how the govern-

ment characterized contempt to the district court at the sentencing hearing here ("Of course, it's a unique crime, it's not a felony, it's not a misdemeanor."). And, at the Rule 11 hearing below, the government had made clear that appellant was pleading guilty "to something other than a felony." Although 18 U.S.C. § 1 purports to classify all offenses as either felonies, misdemeanors, or petty offense misdemeanors, based on the maximum potential punishment authorized,[20] the Supreme Court has never applied this statute to categorize contempt as a felony, as the terms of section 1 would require. In determining the right to trial by jury for contempt, the Court has rather "decided *by analogy* to 18 U.S.C. § 1 that penalties not exceeding those authorized for petty offenses could be imposed in criminal contempt cases without affording the right to a jury trial." *Frank*, 89 S.Ct. at 1506 (emphasis added). Yet at the same time, the Court recognized that "*Congress* ... has not categorized contempts as 'serious' or 'petty.'" *Id.* at 1505 (emphasis added). Similarly, the Court has rejected reliance on 18 U.S.C. § 4083, providing that those convicted of offenses punishable by more than a year's imprisonment may be confined in a penitentiary, as basis for concluding that contempts, since they may be so punished, are therefore "infamous crimes" for which the Fifth Amendment requires a grand jury indictment, notwith-

---

**19.** Our survey of Title 18, by no means exhaustive, indicates that statutes with higher fines than those authorized by section 3623 are comparatively rare but do appear. For example, one who advances $1 million as financing for another offender's loan-sharking activities and who receives back both his principal and $100,000 as profit can be imprisoned for as many as twenty years and fined up to $2 million under an existing statutory offense provision. 18 U.S.C. § 893. In contrast, the maximum fine under section 3623(a)(3) for this felony would be $250,000, and the maximum fine under subsections 3623(c) and 3623(a)(2) would be "twice the gross gain," in this case $200,000.

Likewise, section 3623 does not enhance, but in effect preserves, statutory offense section fines for certain petty offenses. Subsection (a)(2) applies to single offenses only if pecuniary gain to the offender or loss to another results. *See* note 15, *supra.* Subsections (a)(3) through (a)(5) apply only to felonies, misdemeanors resulting in death, and misdemeanors

punishable by prison sentences in excess of six months. As to petty offense misdemeanors not resulting in death or pecuniary gain or loss, subsection 3623(a)(1) thus has the effect of preserving the fine amount specified in the offense statute. *E.g.,* 18 U.S.C. § 916 (a fine of not more than $300 and/or not more than six months for fraudulently and falsely representing one's self as associated with the 4–H clubs).

**20.** Title 18, section 1 provides:

"Notwithstanding any Act of Congress to the contrary:

"(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony.

"(2) Any other offense is a misdemeanor.

"(3) Any misdemeanor, the penalty for which, as set forth in the provision defining the offense, does not exceed imprisonment for a period of six months or a fine of not more than $5,000 for an individual and $10,000 for a person other than an individual, or both, is a petty offense."

standing that potential penitentiary imprisonment was recognized as the standard in this respect for offenses generally. *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 642, 2 L.Ed.2d 672 (1958). The *Green* Court likewise implicitly rejected the argument of Justice Black's dissent there that contempt was a felony—for which a grand jury was required—by virtue of the definition in 18 U.S.C. § 1. *Id.* at 652 & n. 11. *See also United States v. Nunn*, 622 F.2d 802, 803–04 (5th Cir.1980) (grand jury not required in federal contempt).[21]

*(iv) Section 3623 does not authorize fines additional to those authorized by the offense statute or repeal the disjunctive provision of section 401*

Even if section 401 specified an amount of fine—say, not to exceed $50,000—and even if contempt could properly be regarded as a misdemeanor (or a felony), nevertheless we would not read section 3623 as authorizing both a fine *and* imprisonment for contempt under section 401.

The title of section 3623—*"alternative fines,"* not *"additional* fines"—indicates that the section was intended to address the amount of the fine that might be imposed rather than to authorize multiple fines for a single offense. *See House v. Commissioner*, 453 F.2d 982 (5th Cir. 1972).[22] The statute speaks only to the *amount* of a fine that may be imposed, and not to whether a fine may be imposed. Nowhere in section 3623 did Congress write that fines imposed under that provision were to be *in addition to* fines authorized by the offense statutes. To the extent that any ambiguity exists about the relationship of section 3623 to other criminal statutes, we view our interpretation of the section as dictated by the principle that we cannot " 'increase or multiply punishments absent a clear and definite legislative directive.' " *Busic*, 100 S.Ct. at 1753 (citation omitted). Moreover, we must regard section 401 as the more specific statute dealing with the offense of contempt and the imposition of fines in contempt cases, and section 3623 as a more general

---

**21.** We recognize that in certain contexts contempts have been treated as though they were within the terms of statutes applicable to misdemeanors.

In *United States v. Gedraitis*, 690 F.2d 351 (3d Cir.1982), *cert. denied*, 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983), the Third Circuit held that although "[c]ontempt does not fall within the general classification of felony or misdemeanor," it could nevertheless be regarded as a misdemeanor for purposes of 18 U.S.C. § 3401, allowing trial by a magistrate on specific designation by the district judge, *because* the designation there expressly limited "the potential penalties" to those for misdemeanors as provided in 18 U.S.C. § 1, thus bringing that particular contempt within the literal wording of section 1. Nothing comparable exists here to bring this contempt within that definition.

In *United States v. McCargo*, 783 F.2d 507, 510 (5th Cir.1986), we sustained a $25 "special assessment" under 18 U.S.C. § 3013, providing for mandatory assessments on any person convicted of an offense, in addition to a sixty-day prison sentence for contempt. Although section 3013 lists assessment amounts by offense categories described in each instance as "felony" or "misdemeanor," whether contempt fits either category is not addressed in the *McCargo* opinion. Nor was that issue even suggested in the less than a half page of appellant's brief which was devoted to the assessment. The government's brief respecting the assessment was less

than a page and a half, and it too made no mention of whether contempt was a felony or misdemeanor; it merely argued that "the $25.00 was not a fine but an assessment." While not explicit in this respect, we believe that *McCargo* is properly read as simply agreeing with that contention of the government. Section 3013 does not provide for imposition of any sentence and is not punitive; rather its purpose "was to raise revenue to support state crime victim compensation programs" by "assessment of nominal amounts." *United States v. Donaldson*, 797 F.2d 125, 127 (3d Cir.1986). "As § 3013 is not a criminal statute, the rule of lenity" does not apply; nor does the rule concerning the pyramiding of sentences, as the assessment is not a sentence. *Id.* Here, of course, we are dealing with criminal statutes and criminal sentences. Hence, *McCargo* is not controlling.

Appellant has made no challenge, here or below, to the special assessment in this case.

**22.** As we wrote in *House:*

"Where ... there is no collision involved, it is proper to consult both the section heading and the section's content to come up with the statute's clear and total meaning." *Id.* at 987.

We observe that the statutes governing the construction of the United States Code do not address the significance of headings, but that we have looked to 1 U.S.C. § 104 in this context. *E.g., House, supra,* at 988.

statute dealing with fines in offense convictions generally. Construing the two together, "a more specific statute will be given precedence over a more general one, regardless of their temporal sequence." *Busic*, 100 S.Ct. at 1753.

The foregoing principles are particularly applicable where the underlying offense statute provides for a fine. The government's argument would lead to the conclusion that in those instances the section 3623 fine can be imposed *in addition* to the fine authorized by the underlying offense statute. Thus, for example, under the government's theory, for a violation of 18 U.S.C. § 114, a $25,000 fine could be imposed under section 114 and, in addition, a fine of $250,000 could *also* be imposed under section 3623(a)(3). We reject that construction. We think it unlikely such a result was intended by Congress. And, since that construction is not clearly mandated by the language of section 3623, to adopt it is to run counter to the above-noted principles of *Busic*.

█ Accordingly, with respect at least to underlying offense statutes which authorize a fine, we construe section 3623 as substituting a different *amount* of fine authorized from that allowed by the offense statute, as opposed to authorizing a separate fine in addition to the fine authorized by the underlying statute.[23] Even if section 401 specified a $50,000 fine maximum and was classified as, say, a misdemeanor, and was hence clearly within the ambit of section 3623, nevertheless section 3623 would not authorize both a fine and imprisonment for violation of section 401. Section 401, in our hypothetical, would read "punish by fine *not to exceed $50,000* or imprisonment"; and section 3623 would substitute its $100,000 fine amount for the $50,000 of section 401. Thus, one convicted of violating section 401 could, by virtue

of its terms and those of section 3623, be punished by fine not to exceed $100,000 *or* imprisonment. Section 3623 would not be read to authorize a second $100,000 fine which could be imposed in addition to the $50,000 fine or imprisonment allowed by section 401.

Section 401 authorizes *either* a fine *or* imprisonment; section 3623 neither provides specific language allowing both punishments under such a statute nor repeals the limitations of section 401. Nothing in the legislative history of section 3623 suggests that it had such a purpose. We will not find a repeal by implication of the disjunctive language of section 401. *See Rodriguez, supra*, at 1392.

We are strengthened in this conclusion by the realization that Congress could have easily made its intention in this respect clear. In the Sentencing Reform Act of 1984, Congress included the provision now codified as 18 U.S.C.A. § 3551. Pub.L. No. 98–473, § 212(a). This section expressly provides, "A sentence to pay a fine may be imposed in addition to any other sentence." § 3551(b). The Sentencing Reform Act of 1984, containing section 3551, was passed by Congress on October 11, 1984, the same day Congress passed the Criminal Fine Enforcement Act, containing section 3623. Pub.L. No. 98–596, § 6(a). Yet Congress, in enacting section 3551, provided that it would not go into effect until November 1986, *see* Pub.L. No. 98–473, § 235, and in December 1985 the effective date was further extended to November 1987. *See* Pub.L. No. 99–217, §§ 2, 4. Congress thus had in mind, when it enacted section 3623, the question of whether fines would be additional to all other penalties, as well as the language to provide an affirmative answer to that question. Nevertheless, it chose not to so provide in section 3623 or

---

**23.** This case does not require us to speak to those relatively few statutes (*see* note 6, *supra*) which authorize imprisonment but make no provision for a fine. In such instances, it may appear less anomalous to treat section 3623 as authorizing a penalty in addition to that authorized in the underlying statute. Also, such treatment would, in those instances, be consistent with Congress' above-noted intention, in enacting section 3623, to encourage the use of fines "as an alternative to prison." H.R.Rep. No. 98–906, *supra*, at 16, 1984 U.S.Code Cong. & Ad. News 5449. That intention is not, of course, furthered by holding that section 3623 authorizes *imprisonment* as well as a fine even though the underlying statute allows only one or the other, not both.

elsewhere in the Criminal Fine Enforcement Act; it did so provide in section 3551, but chose to postpone the effective date of that section. The government is asking us, in effect, to disregard the effective date provisions of section 3551. We decline to do so.

■ For the reasons stated, we conclude that section 3623 does not provide authorization for a fine, in addition to a prison sentence, as punishment for violation of section 401.

## D. Payment of the fine as satisfaction of the sentence

We have held that appellant was convicted of only one contempt under section 401, and that accordingly his sentence to *both* a fine *and* imprisonment is illegal as being contrary to section 401 and not authorized by section 3623. Consequently, the district court, in its determination of appellant's Rule 35 motion, erred in holding that appellant's sentence was legal. The final question, then, is the relief to which appellant is entitled. Appellant contends that, since he has paid his fine, he is entitled to have his prison sentence vacated under *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943). The government asserts that if the sentence is illegal the district court should nevertheless be allowed to now resentence appellant to impose imprisonment only, as the court at the Rule 35 hearing indicated it would intend to do in the event the sentence to both fine and imprisonment were ultimately held illegal.[24] In this connection, the government argues that *Bradley* has been undermined by later decisions and is not controlling because district courts now have broader resentencing power and because the fine here was prematurely paid and can be returned before appellant serves any imprisonment. We now turn to these contentions.

### (i) The continuing vitality of Bradley

Construing the predecessor statute to section 401,[25] the Supreme Court held that a defendant sentenced to a prison term and ordered to pay a fine could, upon payment of the fine, be relieved of the sentence of imprisonment. *Bradley, supra.* The facts of *Bradley* are directly on point for purposes of this appeal. Bradley was sentenced to serve six months in prison and ordered to pay a $500 fine. He was taken into custody and committed to prison on September 28. On October 1, his attorney paid the fine in full. Noting that the contempt statute authorized only imprisonment or a fine, the Supreme Court wrote:

"Later on [the same day the fine had been paid] the court, realizing that the sentence was erroneous, delivered to the clerk an order amending [the sentence] by omitting any fine and retaining only the six months' imprisonment. The court instructed the clerk, who still held the money, to return it to the petitioner. The latter refused to receive it, and the clerk has it.

" . . . .

" . . . [W]e are of the opinion that the errors involved in the sentence require that [Bradley] shall be freed from further imprisonment.

"When . . . the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end. It is unimportant that the fine had not been covered into the treasury; it had been paid to the clerk, the officer of the United States authorized to receive it, and petitioner's rights did not depend on what that officer subsequently did with the money.

"It follows that the subsequent amendment of the sentence could not avoid the satisfaction of the judgment, and the attempt to accomplish that end was a nullity. Since one valid alternative provision

---

**24.** *See* note 14, *supra.*

**25.** Section 385, 28 U.S.C. (repealed), addressed the contempt offense and contained the disjunc-

tive "fine *or* imprisonment" language now found in section 401. *See Bradley,* 63 S.Ct. at 470.

of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint." *Id.*, 63 S.Ct. at 470–71 (footnotes omitted).

*Bradley* appears to control this case and has been followed without deviation in both this and other Circuits.[26] Although the government concedes that the decision has never been explicitly overruled, it contends that the Supreme Court has since undermined *Bradley* by limiting *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), upon which *Bradley* relied,[27] in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 238 (1980).

We need not recount in full the argument of the government on this point; it suffices for us to state that the government urges this Court to do what the Supreme Court has declined to do—that is, to read *DiFrancesco* as impliedly fully overruling *Lange* and, through *Lange*, *Bradley*. The government contends that the latter two decisions rested upon a double jeopardy theory repudiated by *DiFrancesco*. To the contrary, we find that the Supreme Court in *DiFrancesco* carefully distinguished *Lange* and explained why that decision was unaffected. First, *DiFrancesco* described as dictum language in *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931), "to the effect that the federal practice of barring an increase in sentence by the trial court after service of the sentence has begun is constitutionally based." *DiFrancesco*, 101 S.Ct. at 438. Then the Court specifically stated that this "dictum" remained applicable in cases like *Lange* where resentencing would impose punishment which, when added to that already satisfied, would exceed what could have been imposed initially:

"In *Lange* the trial court erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one or the other of these two punishments. Lange had paid the fine and served five days [of a one-year sentence] in prison. The trial court then resentenced him to a year's imprisonment. The fine having been paid and the defendant having suffered one of the alternative punishments, 'the power of the court to punish further was gone.' ... The holding in *Lange*, and thus the dictum in *Benz*, are not susceptible of general application. *We confine the dictum in* Benz *to* Lange*'s specific context* ...."

"The guarantee against double punishments that has evolved in the holdings of this Court plainly is not involved in this case. As *Ex parte Lange* demonstrates, *a defendant may not receive a greater sentence than the legislature has authorized.* No double jeopardy problem would have been present in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment." *DiFrancesco*, 101 S.Ct at 438 (emphasis added).

Faced with this plain approval of the rule of *Lange* (and, impliedly, of *Bradley* ) barring further punishment that, with the punishment already suffered, would exceed the limits legislatively authorized, we cannot view *Bradley* as having been undermined or overruled by *DiFrancesco*, as the

---

**26.** *See, e.g., United States v. DiGirlomo,* 548 F.2d 252 (8th Cir.1977) (ordering imprisonment portion of sentence vacated after contemnor was sentenced to both fine and prison and fine had been paid); *United States v. Miller,* 540 F.2d 1213 (4th Cir.1976) (same); *United States v. Sampogne,* 533 F.2d 766 (2d Cir.1976) (same); *see also United States v. Hilburn,* 625 F.2d 1177 (5th Cir.1980) (upholding district court's correction of its sentence imposing both fine and imprisonment on a contempt offense when the district court reformed its sentence before the defendant had paid his fine); *United States v. Barnette,* 546 F.2d 187 (5th Cir.) (permitting district court to reform its sentence when a contemnor appealed a sentence imposing both

fine and prison and contemnor had satisfied no portion of either sentence), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977).

**27.** *See Bradley,* 63 S.Ct. at 470, 471 n. 1 & n. 3. *Lange* relied on the grounds of double jeopardy *and* double punishment in holding that a defendant convicted of violating a "fine or imprisonment" statute fully satisfied his sentence by paying the fine, barring reformation of the sentence by the district court. *See Lange,* 85 U.S. (18 Wall.) at 175, 21 L.Ed. 872 ("He is not only put in jeopardy twice, but put to actual punishment twice for the same offense.").

government urges. The Supreme Court may overrule its own earlier decisions, but this Court cannot.

The government also suggests that the resentencing powers of a district court have been significantly enlarged by Rule 35, which did not exist when *Lange* and *Bradley* were decided. We find this argument unpersuasive, in part because the Supreme Court gave no weight to this theory in its mentions of *Lange* in *DiFrancesco* and in part because this Court has indicated that the bar of *Lange* and *Bradley* against resentencing which, with the sentence already satisfied, will impose punishment beyond that authorized remains in effect even with Rule 35.[28]

 Thus, we find no basis in *DiFrancesco* or Rule 35 to vary from the Supreme Court's holdings that a contemnor cannot be punished by both a fine and imprisonment for a single contempt offense under section 401, and that if the contemnor has fully paid the fine imposed in a sentence then he has satisfied that lawful alternative sentence and cannot also be subjected to imprisonment for the same offense, as Congress has not authorized both punishments.

. The government nevertheless calls to our attention numerous cases involving a district court's power to correct an illegal sentence. Indeed, we have stated as a general rule that "[f]ederal courts have uniformly held that resentencing to correct an illegal sentence does not implicate double jeopardy rights." *United States v. Denson*, 603 F.2d 1143, 1148 (5th Cir.1979) (en banc).[29] Correction of a sentence can occur even if service of the sentence has begun, *United States v. Allen*, 588 F.2d 183, 185 (5th Cir.1979), even if the correct sentence may be more onerous to the defendant than the original, *e.g., Llerena v. United States*, 508 F.2d 78, 80–81 (5th Cir. 1975).

 The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case

**28.** *See United States v. Henry*, 709 F.2d 298 (5th Cir.1983) (en banc). Both the plurality opinion, *id.* at 309, 312–13, and the dissenting opinion joined by six judges, *id.* at 324, 327–29, 330, discuss *Lange* and its relationship with *DiFrancesco* without suggesting that Rule 35 renders *Lange* inapplicable when a lawful sentence has been fully satisfied, particularly where resentencing would, together with the satisfied sentence, exceed statutory limits. Other Circuits facing the *Bradley* issue since the adoption of Rule 35 also have treated *Bradley* as a still controlling precedent. *See* note 26, *supra* (citing cases following *Bradley* and decided after Rule 35 became effective in 1946). *See also Gant v. United States*, 161 F.2d 793 (5th Cir. 1947), *on later appeal*, 308 F.2d 728 (5th Cir. 1982), where we invoked Rule 35 but observed that it merely restated existing law. 161 F.2d at 796. *But see United States v. Crawford*, 769 F.2d 253, 258 (5th Cir.1985) (describing statements in *Henry* plurality opinion about the relationship of *Lange* and Rule 35 as "dictum of a minority of the en banc court").

We also observe that in *Lange*, which of course is relied on in *Bradley*, the Court stated: "The general power of the court over its own

judgments, orders and decrees, in both civil and criminal cases, during the existence of the term at which they are first made, is undeniable." *Lange*, 85 U.S. (18 Wall.) at 167, 21 L.Ed. 872. The same statement is made in *Yavorsky v. United States*, 1 F.2d 169 (3d Cir.1924), which reached a result similar to that of *Lange* and *Bradley*. *Yavorsky*, too, is cited with approval by *Bradley*. 63 S.Ct. at 471 n. 3. In *Bradley*, *Lange*, and *Yavorsky*, the purportedly "corrective" resentencing *was* done at the *same* term as the original sentence, so that was not the problem. It was not want of a procedural or jurisdictional vehicle which governed the outcome of those cases. Further, the power of the court to correct an illegal sentence on motion was recognized in *Holiday v. United States*, 130 F.2d 988 (8th Cir.1942), which relied on the companion case of *Holiday v. Johnston*, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941). Of course, these *Holiday* cases are pre-*Bradley*.

**29.** We note, however, that this general statement does not govern *Bradley*-type cases, because the discussion of *Lange* quoted above from *DiFrancesco* indicated that the Supreme Court viewed double jeopardy as implicated by the particular facts of *Lange*.

from these other cases [30] is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes. Here the appellant challenged not the entirety of his sentence but only the portion calling for his imprisonment, which he contended and contends had become and remained illegal since he had paid the fine. In none of the cases relied on by the government did the resentencing, when combined with the sentence then already suffered and satisfied, impose greater punishment on the defendant than legislatively authorized. We think it clear that if a defendant, sentenced for contempt to a year in prison and a $100,000 fine, serves two days of his prison sentence but does not pay his fine, he cannot then be resentenced to the fine only and thus be forced to pay it. The resentencing cases provide no basis to depart from *Bradley*.

### (ii) Whether the fine was prepaid and may be returned before service of the prison sentence

■ The government and the district court below relied to some degree on the theory that the court's order for appellant's prison term to begin on February 18, 1986 also deferred his obligation to pay the $10,000 fine and rendered his payment of the fine on December 11, 1985 premature. We find in the district court's pronouncement of sentence and commitment order no indication that the payment of the fine was subject to any special arrangement for the deferral of payment, and we therefore view the fine as subject to statutory provisions requiring that payment of a fine be immediate absent some specific provision to the contrary.[31] We reject the government's contention that this case can be distinguished from *Bradley* on the basis of the asserted prepayment of the fine.

■ The government also contends that the district court should be permitted to return the fine to appellant and to impose only the prison sentence, because returning the fine should have the same effect as though that punishment had never been imposed. As an original proposition, the government's position might be arguable, but we find once again that *Bradley* has addressed the situation and compels us to reject this argument.[32] As noted above,

**30.** The government cites numerous cases demonstrating the power of a district court to resentence a defendant; these cases, however, involve resentencing after different sentences of confinement were imposed on duplicitous counts, after illegal juxtapositions of dual sentences, after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows. None of these cases overcomes the rule of *Bradley*. *See, e.g., Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), *on remand, United States v. Busic,* 639 F.2d 940 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Rosen,* 764 F.2d 763 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986); *United States v. Jefferson,* 760 F.2d 821 (7th Cir.), *vacated,* 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985), *opinion after remand,* 782 F.2d 697 (7th Cir.1986); *United States v. Heredia-Fernandez,* 756 F.2d 1412 (9th Cir.), *cert. denied,* 474 U.S. 836, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985); *United States v. Raimondo,* 721 F.2d 476 (4th Cir.1983), *cert. denied,* 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); *United States v. Pestor,* 679 F.2d 338 (3d Cir.1982); *McClain v. United States,* 676 F.2d 915 (2d Cir.), *cert. denied,* 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *United States v. Fiore,* 470 F.2d 1149 (3d Cir.1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1899, 36 L.Ed.2d 399 (1973). *See also United States v. Crawford,* 769 F.2d 253 (5th Cir.1985) (upholding increased punishment on resentencing after sentences were imposed in an illegal manner and when the original sentences were not fully satisfied). *But see United States v. Henry,* 709 F.2d 298 (5th Cir.1983) (en banc; plurality opinion) (vacating an illegal sentence and refusing to vacate a legal sentence, thereby barring district court from increasing legal sentence on resentencing).

**31.** 18 U.S.C. § 3565(b).

**32.** We recognize that, at least conceptually, returning a fine arguably is or might be made different from striking a prison sentence that has already been partially served on the theory that days spent in jail cannot be returned, but money can be. However, this is not a satisfactory rationale on which to distinguish *Bradley*. Where, for example, one month of a nine-month sentence has been served, the month served *can* be "returned" by then treating the sentence as one for eight, instead of nine, months (and perhaps also then giving credit for the month served). Nevertheless, this was not the approach of *Bradley* as reflected in the text, *infra*.

the district court in *Bradley* did offer to return the fine to the contemnor, and the Supreme Court nonetheless held that Bradley's entire prison sentence must be set aside and, impliedly, that he was not obligated to accept the money.

The government also contends that *Bradley* and *Lange* are distinguishable because in those cases the defendant did serve some prison time—not more than four days of a six-month sentence in *Bradley,* not more than five days of a one-year sentence in *Lange*—while here appellant has not yet commenced service of the imprisonment portion of his sentence. This, however, affords no basis for distinction. *Bradley* and *Lange* voided the *entire* prison sentence. If return of the fine allows the defendant to be treated as if the fine had never been imposed and paid, which is what the government argues, then the *Bradley* defendant would have been made to serve the balance of his prison sentence, or at least all but four days thereof. The contemnor in *Bradley* was entitled to be immediately released from prison on payment of the fine, notwithstanding its elimination from the sentence later the same day and the prompt tender of its return to the contemnor, only because return of the fine would be wholly ineffective to change the fact that the contemnor had already fully satisfied *the fine* portion of his sentence.

Moreover, the record here clearly reflects, and the government conceded at oral argument, that no offer to return the $10,-000 has been made. Although this Court has recognized that a defendant can recover a fine imposed under an unconstitutional statute,[33] the government cites no authority for the proposition that the courts can compel a contemnor to take back a fine and to accept, instead, a term in prison. Nor does the government indicate whether appellant would be entitled to receive interest or other compensation for the lost use of his funds if he sought to recover them.[34] *Bradley* alone, even without these additional problems, requires us to hold that attempts to return the fine to appellant will not justify the execution of appellant's prison sentence.

### III.

■ We respect the thrust of language cited by the government from *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947) (citations omitted):

"This Court has rejected the 'doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.' ... The Constitution does not require that sentencing should be a game in which a wrong move by the judge

---

**33.** *E.g., United States v. Lewis,* 478 F.2d 835, 836 (5th Cir.1973) (holding one seeking recovery of fine need not rely on the Tucker Act), *affirming* 342 F.Supp. 833 (E.D.La.1972) (ordering fines returned without interest after a *coram nobis* proceeding); *see also United States v. Bursey,* 515 F.2d 1228 (5th Cir.1975) (recognizing suit under Tucker Act for recovery of appearance bond deposited with court); *id.* at 1233–34 (citing cases allowing the recovery of fines improperly imposed); *United States v. Summa,* 362 F.Supp. 1177 (D.Conn.1972) (recognizing suit to recover fines under the Tucker Act and allowing only *post*-judgment interest pursuant to the provisions of 28 U.S.C. § 2411(b)).

**34.** The version of 28 U.S.C. § 2411 in effect at the time *Summa, supra,* was decided is no longer in effect. 28 U.S.C.A. § 2411 (as amended in 1982) contains no general provision like section 2411(b) allowing *post*-judgment interest and, instead, is limited to "any judgment of any court rendered ... for any overpayment in respect of any internal revenue tax." In the absence of a

specific contractual or statutory provision to the contrary, interest does not run on a claim against the United States. *United States v. Louisiana,* 446 U.S. 253, 100 S.Ct. 1618, 64 L.Ed.2d 196 (1980). Even if appellant could recover interest from the date of a judgment requiring the fine to be refunded to him, there apparently is not, and never has been, any provision allowing in such a situation any *pre*-judgment interest from the date the fine was paid. The government points to no statute allowing appellant to recover interest for the more than one year during which he has lost the use of this $10,000, and we observe that any effort to return the fine without some compensation for the lost use of these funds creates a pecuniary penalty at least equal to the $500 fine involved in *Bradley.* This is quite different from the less-than-one-day period which Chief Justice Stone regarded as "de minimis" in his *Bradley* dissent. 63 S.Ct. at 471.

means immunity for the prisoner.... In this case the court 'only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the conviction of the offender.' " [35] However, *Bozza* does not purport to depart from *Lange* or *Bradley. See Bozza,* 67 S.Ct. at 649 n. 2 (citing *Lange* and *Bradley* as examples of cases in which "the trial court could not correct the sentence without causing him to suffer double punishment"). Furthermore, although appellant will serve no time in prison for this offense, he has not "escape[d] punishment altogether."

*Bradley* may be overly technical, as Chief Justice Stone contended in his dissent there, arguing that the less than one day the contemnor had been deprived of his money was *de minimis.* 63 S.Ct. at 471. But it is not for us to overrule or modify *Bradley.* We also note that Congress has had more than four decades since *Bradley* was handed down in which to amend the contempt statute's provision limiting pun-

ishment to a "fine or imprisonment." Recognizing that an amendment allowing a fine in addition to any other punishment on every offense conviction is scheduled to go into effect in November 1987, we are nonetheless bound to apply existing law.

"[T]o the extent that cases can be hypothesized in which this holding may support curious or seemingly unreasonable comparative sentences, it suffices to say that the asserted unreasonableness flows not from ... this decision, but from the statutes as Congress wrote them. If corrective action is needed, it is ... Congress that must provide it. 'It is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated.' " *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980) (citations omitted).

Congress has now acted, but in a manner that does not affect the disposition of this case.

**35.** We likewise respect the views of our dissenting colleague, whose learning and sound judicial instincts have so graced this Court over the years. Nevertheless, we are unable to concur in his reading of *DiFrancesco.* The issue in *DiFrancesco* was "whether the increase of a sentence on review under [18 U.S.C.] § 3576 constitutes multiple punishment in violation of the Double Jeopardy Clause." 101 S.Ct. at 438. *DiFrancesco* "confine[d] the dictum in *Benz* [that the Constitution prohibits an increase in sentence after service of it is begun] to *Lange's* specific context." 101 S.Ct. at 438. *Lange's* specific context, as recited in the same passage of *DiFrancesco,* involved a sentence of fine and imprisonment under a statute authorizing only one or the other, but not both, where the defendant paid the fine and was then resentenced to imprisonment only. That is the specific context which resentencing of Holmes would present. "The holding in *Lange*" which *DiFrancesco* refers to and approves, is plainly that described by the latter as "[t]he fine having been paid and the defendant having suffered one of the alternative punishments, 'the power of the court to punish further was gone.' " 101 S.Ct. at 438. *DiFrancesco* goes on to explain that "[a]s *Ex parte Lange* demonstrates, a defendant may not receive a greater sentence than the legislature has authorized." *Id.*

None of the cases relied on by the dissent (or the government) involves sentences to alternative and nonfungible punishments under a statute authorizing either but not both. None involves a situation where the defendant has dis-

charged and suffered one of the nonfungible alternatives, so that subsequent resentencing to force him to discharge the other *necessarily* means that he will suffer "a greater sentence than the legislature has authorized." One erroneously sentenced to a fine and imprisonment, where either but not both are authorized, who serves some of the imprisonment but has not paid the fine, may not thereafter, by resentencing to eliminate the imprisonment sentence, be forced to pay the fine. That the same result obtains where the fine is first paid, and the resentencing seeks to enforce the imprisonment by eliminating the already paid fine, is made clear by *Bradley.* In either case, the resentencing would exact punishment beyond that legislatively authorized. And, as *Bradley* also demonstrates, retender of the paid fine does not change the result. Indeed, this case is *a fortiori* of *Bradley,* as here, unlike *Bradley,* there has never been any retender of the $10,000 fine which Holmes paid over a year previously, and the government, with the district court's approval, has continued to retain and claim entitlement to the fine, as well as to the prison sentence. The case for a *"de minimis"* exception, as urged by Chief Justice Stone's *Bradley* dissent, is thus less compelling here than in *Bradley,* where the $500 fine was retendered no more than a day after it was paid. It is, of course, irrelevant that in *Bradley* (and in *Lange*) a few days of the six-month (one year in *Lange*) confinement sentence had been served, as that could have been cured by equivalent reduction of the unserved time.

We are constrained to conclude that, pursuant to *Bradley,* the district court's denial of appellant's Rule 35 motion must be reversed, and the cause remanded with directions to vacate the imprisonment portion of appellant's sentence.

We are, of course, aware that in many respects this case represents a miscarriage of justice. Undoubtedly Holmes deserves to serve some confinement, as the district court plainly intended. Because of the anomalous nature of section 401 and the decision in *Bradley,* a mistake was made by the district judge and the government which is now beyond recall. We imply no criticism of either; when the governing rules are somewhat unusual and technical, their application will inevitably involve some mistakes. That is part of the price. We should not pretend otherwise. The government has advanced several theories to support its position. Each has at least some superficial plausibility, but in our judgment each must be rejected. In cases of this sort, where the legal issues are arguable and the equities heavily on one side, the temptation is strong to bend the law itself. Such judicial bending of fixed legal rules, however, tends ultimately to be destructive of the rule of law. Of course, the judicial function requires us not only to conscientiously, even-handedly, and fairly interpret the law, but also to similarly apply it to the unique facts of each case. The latter duty, however, does not permit us to disregard the law in order to achieve a desired result in a particular instance.

The order of the district court denying appellant's Rule 35 motion is REVERSED, and the cause is REMANDED for further proceedings consistent herewith.

JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part:

The sentence of both imprisonment and a fine under § 401 was illegal at the very moment it was imposed and announced. The trial court has the power and the duty to correct it at any time—indeed, even after all or part of it has been served. Principles of double jeopardy do not protect a person from such correction.

I therefore vigorously dissent from the Court's holding that the sentence is beyond correction. I concur, however, in the Court's conclusion that Holmes was charged in the information with a single count of contempt and in its conclusion that there is no basis whatsoever for the government's contention that 18 U.S.C. § 3623 authorizes a $10,000 fine in addition to a prison sentence for a single contempt under 18 U.S.C. § 401.

My disagreement with the Court lies entirely with its reliance on the authority of *In re Bradley,* 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943). *In re Bradley* relies entirely on *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), which was restricted to its facts by the Supreme Court in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Thus, the continued validity of *Bradley* is extremely questionable.

This Court has not hesitated to reform illegal sentences under F.R.Crim.P. 35 even after a legally complete portion of that sentence has been served when the portion served was imprisonment. I find no reason to hold otherwise just because the portion of the sentence Holmes has incurred is a monetary fine.

### The Mortar of Amending an Illegal Sentence

Rule 35 provides that "[t]he court may correct an illegal sentence at any time." Not only does the District Court have the ability to correct illegal sentences under Rule 35, we have additionally held that "when a sentence imposed ... does not conform to the applicable penalty statute, [the District Court] has a duty to correct this sentence." *United States v. Hilburn,* 625 F.2d 1177, 1182 (5th Cir.1980), citing *United States v. Allen,* 588 F.2d 183, 185 (5th Cir.1979). As the Court unanimously concludes, a sentence of both a fine and imprisonment under § 401 is an illegal sentence, the only question is determining what relief is available to correct this illegal sentence.

In *United States v. Hilburn,* 625 F.2d 1177, 1181 (5th Cir.1980), we affirmed the

District Court's correction of a sentence which imposed both a fine and imprisonment for contempt under § 401. We did not reach the *Bradley* question there because the illegal sentence was corrected prior to any attempt by the defendant to satisfy either portion.[1] Therefore, there is no way to get away from the startling fact that Holmes' sentence, illegal from the very moment it was announced by the District Court, was subject at that time to correction under F.R.Crim.P. 35(a). *In re Bradley* becomes a necessary factor in our analysis because, unlike Hilburn, Holmes' sentence was not reformed until after he paid his fine.

### Cracks in the Foundation

The primary question on this appeal—and my principal difference with the Court—is whether the *Bradley* rule has continuing validity following the adoption of F.R.Crim.P. 35 and the Supreme Court's decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

It is beyond reproach that *Bradley* is on point with this case and has not yet been *explicitly* overruled by the Supreme Court. Many would stop the inquiry here, however, to do so would ignore our obligation to interpret and apply later developments in case law in a logical and reasonable fashion. At the same time, it would be equally remiss to suggest that in our role as an article III inferior court, we stand in a position to review the correctness of a decision of the Supreme Court which has not been undone by that Court's later decisions. Yet because *Bradley's* foundation

has been so severely eroded, I find it necessary to examine other developments in the law for the best evidence of the status of the current law.

Thus, I find myself in the audacious, and generally impermissible position of seriously questioning whether the Supreme Court's prior decision has been implicitly overruled by its later decisions and rulings. As a Judge sworn to uphold the law and enthusiastic in my unqualified support of the absolute hierarchical supremacy of Supreme Court decisions, I must have a substantial basis for believing that I may follow such a course. There is a substantial precedent in the Fifth Circuit for doing so.

Judge Richard T. Rives, former Chief Judge and a distinguished Judge of this Court, found himself in a similar position writing for the three Judge District Court panel in the celebrated Montgomery, Alabama bus case of *Browder v. Gayle*, 142 F.Supp. 707 (M.D. Ala. 1956), *aff'd*, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956), in stating that *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896), was implicitly overruled by *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The Supreme Court referred to *Plessy* six separate times in *Brown v. Board* without ever expressly overruling it.[2] Nevertheless, over the respectful dissent of District Chief Judge Seybourn H. Lynne, Judge Rives, obviously conscious of the portent of his actions, wrote:

> Even a statute can be repealed by implication. A fortiori, a judicial decision, which is simply evidence of the law and not the law itself, may be so impaired by

---

1. Hilburn attempted to pay the fine the day after the District Court reformed his sentence under Rule 35. His check was returned by the clerk along with a letter informing him that the fine had been previously withdrawn by the Court. This Court rejected the defendant's argument "that his tender of the fine constitutes satisfaction of one alternative provision of the original sentence ... since ... the original sentence was modified prior to the time the defendant attempted to pay the fine." *Hilburn*, 625 F.2d at 1181.

2. Today, few would dispute that the Supreme Court overruled *Plessy v. Ferguson* in *Brown v.*

*Board.* Yet even today, when one shepardizes *Plessy v. Ferguson, Brown v. Board* is only listed as questioning it—no where to date has the Supreme Court expressly overruled *Plessy.* Hence, under the majority's view, we would be required to continue to uphold the separate but equal doctrine in transportation cases as several courts did immediately following *Brown.* Judge Lynn earnestly argued, as the majority has in this case, that we are bound by prior Supreme Court cases until such time as it is expressly overruled by that Court. *Browder,* 142 F.Supp. at 717–21, (Lynn, J., dissenting).

later decisions as no longer to furnish any reliable evidence. We cannot in good conscience perform our duty as judges by blindly following the precedent of Plessy v. Ferguson ... when our study leaves us in complete agreement ... that the separate but equal doctrine can no longer be safely followed as a correct statement of the law. In fact, we think that Plessy v. Ferguson has been impliedly, though not explicitly, overruled and that, under the later decisions, there is now no rational basis upon which the separate but equal doctrine can be validly applied to public carrier transportation.

*Id.* at 716–17.

Similarly, my study of *In re Bradley*, Rule 35, and *DiFrancesco* leaves me with the firm conviction that *Bradley* is no longer a controlling statement of the law.

### The Wall Comes Tumbling Down

The crucial language of *Bradley* states: When ... the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As a judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end. [citing *Ex parte Lange*].

*In re Bradley*, 318 U.S. at 52, 63 S.Ct. at 471, 87 L.Ed. at 609.

This is not the proposition which *Ex parte Lange* continues to support. In *DiFrancesco* the Supreme Court restricted *Ex parte Lange* to its facts. The Supreme Court stated: "The holding in *Lange*, and thus the dictum in [United States v.] *Benz*, [282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931),] are not susceptible of general application. We confine the dictum in *Benz* to *Lange's* specific context." *DiFrancesco*, 449 U.S. at 139, 101 S.Ct. at 438, 66 L.Ed.2d at 347.

Lange was sentenced to one year imprisonment and a $200 fine under a statute providing for either fine or imprisonment. After serving five days in jail, he paid his fine and moved to vacate the remaining portion of his prison sentence. The District Court vacated his sentence and re-sentenced Lange to one year's imprisonment commencing from that date. Thus, the total sentence Lange would have served was one year and five days which exceeded the one year maximum under the statute. The Court traced its inability to amend a sentence in 1874 back to the English common law. It concluded that a Court was without authority to vacate a sentence and re-sentence the defendant, even if done during the same term, because it had no way of avoiding the portion already served. Hence, the result would be that the defendant would serve two sentences for a single crime. *Lange*, 85 U.S. (18 Wall.) at 168–78, 21 L.Ed. at 876–78.

The Supreme Court, *in DiFrancesco*, held that *Ex parte Lange* continues to support the proposition that "a defendant may not receive a greater sentence than the legislature has authorized." *DiFrancesco*, 449 U.S. at 139, 101 S.Ct. at 438, 66 L.Ed.2d at 347. It no longer supports the proposition cited in *Bradley* that once an alternative penalty of a sentence is served, the Court is unable to reform the remaining portion to make the total sentence legal.

When the Supreme Court restricted *Ex parte Lange*, it made no mention of *Bradley*. However, *Bradley* relied almost exclusively on *Ex parte Lange*. By limiting *Lange* to its facts, the Supreme Court casts grave doubt on the continued validity of *Bradley* which had expanded *Lange's* original holding.[3]

The later development of sentence correction law under F.R.Crim.P. 35 demonstrates that, contrary to the Court's conclusion in both *Bradley* and *Lange*, the power of a Court is no longer at an end once a

---

**3.** In *Ex parte Lange,* the Court held that it was unable to avoid double punishment because the fine had already passed into the United States Treasury and was beyond the reach of the Courts. In *Bradley,* the Court held, without discussion, that it was "unimportant that the fine had not been covered into the treasury." *Bradley*, 318 U.S. at 52, 63 S.Ct. at 471, 87 L.Ed. at 609.

portion of the sentence is incurred. "Correction of a sentence imposed in an illegal manner does not violate double jeopardy even if the correction increases the punishment, and the fact that [the defendant] has commenced serving the sentence is irrelevant." *United States v. Crawford*, 769 F.2d 253, 258 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986), quoting *United States v. Stevens*, 548 F.2d 1360, 1362–63 (9th Cir.), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977);[4] *see also, United States v. DiFrancesco*, 449 U.S. at 132–39, 101 S.Ct. at 434–38, 66 L.Ed.2d at 342–47; *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 649, 91 L.Ed. 818, 822 (1947), *United States v. Allen*, 588 F.2d 183, 185 (5th Cir.1979).

As the majority identifies, since the adoption of F.R.Crim.P. 35, we have not hesitated to correct illegal sentences even after service of the sentence has begun. *See, e.g., United States v. Olivares*, 786 F.2d 659 (5th Cir.1986); *United States v. Crawford*, 769 F.2d 253 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *United States v. Denson*, 603 F.2d 1143 (5th Cir.1979) (en banc); *United States v. Allen*, 588 F.2d 183 (5th Cir.1979); *Llerena v. United States*, 508 F.2d 78 (5th Cir.1975).

The majority distinguishes these cases by adopting *Bradley's* language that once the defendant has complied with a portion of the sentence which could lawfully have been imposed, the Court may not later reform that sentence. Yet, in *United States v. Rollins*, 543 F.2d 574, 575 (5th Cir.1977), the defendant was sentenced to a term of three years and a term of ten years under a statute which provided for a maximum of ten years imprisonment. After the defendant served his three-year sentence, this Court permitted his ten-year sentence to be reformed so that "when coupled with the other three years already served, [it] will

not exceed the statutory maximum." Rollins' reformed sentence did not violate his rights against double punishment because, as reformed, his total sentence did not exceed the statutory maximum.

In *Ex parte Lange*, the only option then available was to vacate the earlier sentence and begin a new one, there was no method by which the Court could amend an invalid sentence. We now have the means in Rule 35 to credit a defendant with that portion of a sentence already served to effectuate the imposition of a legal sentence consistent with the trial Judge's intent. The record, including that of the Rule 35 hearing, clearly indicates the trial Judge intended for Holmes to, at a minimum, serve a prison term and in addition, if possible, pay a fine. The fact that Holmes won the race to the clerk's office and paid his fine prior to the Judge correcting his illegal sentence by eliminating the fine should not preclude this Court or the District Court from correcting his sentence in a way which its notions of justice are served rather than in a way Holmes naturally urges.

It is well established that a sentence which does not comply with the letter of the criminal statute which authorizes it is so erroneous that it may be set aside on appeal.... But in those cases it was recognized that an excessive sentence should be corrected, even though the prisoner had already served part of his term, not by absolute discharge of the prisoner, but by an appropriate amendment of the invalid sentence by the court of original jurisdiction.... The Constitution does not require that sentencing should be a game in which the wrong move by a judge means immunity for the prisoner.

*Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 649, 91 L.Ed. 818, 822 (1947).

Holmes will not be subject to double punishment in violation of *Ex parte Lange*

---

**4.** In *Crawford*, this Court rejected the appellants' argument that the case was controlled by *United States v. Henry*, 709 F.2d 298 (5th Cir. 1983) (en banc). "*Henry* contained dictum stating that 'this court is constrained to follow *Ex parte Lange*—as it was generally understood be-

fore the Court's ruling in *DiFrancesco*—in every Rule 35 case.' ... We are not bound by dictum of a minority of the en banc court, and we decline to follow it." *Crawford*, 769 F.2d at 258, quoting *Henry*, 709 F.2d at 310.

if under the Court's direction, the money paid as a fine to the clerk is returned. The punishment of a fine is not the event of payment of the fine, but rather it is the permanent loss of money.[5]

My study of Rule 35 and *DiFrancesco's* limitation on the singular case *Bradley* relies upon compels me to conclude that there is no rational basis upon which the *Bradley* rule can be validly applied so that a defendant, can prevent the Court from chosing the method in which an illegal sentence is reformed. I find no reason to distinguish between crediting and returning to the defendant money improperly paid into the Court than with crediting him for prison time improperly served. *Ex parte Lange* has been restricted to its facts and *Bradley* has suffered a similar fate.

This case compels me, with all conscientious deference to the supremacy of Supreme Court law to conclude that the basis for the *Bradley* decision is no longer valid and that the power of the Court is no longer at an end when a defendant has satisfied a portion of an illegal sentence. Unlike the pre-Rule 35 situation the *Bradley* Court faced, the subsequent amendment of Holmes' sentence could avoid the satisfaction of the judgment by crediting and returning to Holmes the $10,000. If this were done, the Court could then impose, as it attempted to do, a legally correct sentence, the service of which would not result in double jeopardy.

I join the Court in its disparagement of Holmes' conduct and that the trial Court thought it deserves a prison sentence. The District Court was emphatic during Holmes' Motion to Vacate hearing that the circumstances mandated a prison sentence. Since all have conceded—and still do—that the sentence was illegal, constitutionally demanding correction, I would allow the District Court to reform the sentence so as to avoid the "miscarriage of justice" identi-

fied by this Court's holding. I therefore, respectfully and vigorously dissent.

---

5. In this day and time of almost limitless power of the Federal Courts, there can be no serious question of the power of the judiciary to order the repayment by the government of the fine illegally paid by Holmes to the clerk. The alac-

rity of Holmes cannot frustrate the Court in its purpose to vacate the illegal sentence and impose a legal sentence reflecting the Judge's purpose.