[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12353
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20273-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUANA BAEZ PAULINO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 13, 2020)

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Juana Baez Paulino appeals her sentence of 24-months' imprisonment followed by 2 years of supervised release for criminal contempt, in violation of 18 U.S.C. § 401(3).  Paulino raises two arguments on appeal.  First, she asserts that her sentence is procedurally and substantively unreasonable because the district court failed to consider the 18 U.S.C. § 3553(a) factors, failed to weigh those factors with the mitigating evidence that she provided, and considered improper factors in imposing her sentence.  Second, she contends that the district court plainly erred in imposing a term of supervised release for her criminal contempt conviction.  After a review of the record, we affirm.

## I. Background

On April 25, 2013, a grand jury indicted Paulino for failure to surrender for service of her sentence, in violation 18 U.S.C. § 3146(a)(2) and (b)(1)(A)(ii) (Count 1), and criminal contempt, in violation of 18 U.S.C. § 401(3) (Count 2).  The indictment was predicated on Paulino's former guilty plea to making a false statement in application for a U.S. passport and identity theft.  She was sentenced to 25 months imprisonment, but prior to her surrender date on April 13, 2013, she cut off her ankle monitor and absconded.  Five years later, in late 2018, police officers found her living near Boston, Massachusetts, under a false name.  Paulino pleaded guilty to criminal contempt, Count 2, in March 2019.

2

A Presentence Investigation Report ("PSI") was prepared for Paulino's sentencing hearing. According to the PSI, Paulino was an undocumented immigrant from the Dominican Republic who entered Puerto Rico in 2002. She entered the Florida illegally in 2006. The PSI detailed Paulino's history with abusive men, including one who beat her while she was pregnant. Paulino subsequently gave birth to a son with serious heart defects who required multiple surgeries and near-constant medication. At the time of Paulino's sentencing, her son was being cared for by her mother and fiancé in Boston.

Paulino filed a motion for a downward variance on the basis that she absconded in order to care for her ailing son because she had no one else "she would have trusted to care for [him]." Paulino also argued that a downward variance was necessary to avoid unwarranted sentencing disparities and cited numerous cases involving similar conduct of absconsion as comparisons to argue for a short sentence. In support of her motion, Paulino attached letters from her mother, son, fiancé, members of her fiancé's family, and two officials at her son's school.

At sentencing, the district court stated that it had reviewed the PSI and the letters that Paulino attached to her motion. The court recognized that the Guidelines do not contain a provision for criminal contempt, but they may be used analogously with the conduct most similar to the defendant's contempt. The court

3

summarized the PSI, noting that the PSI concluded Paulino had an offense level of 12, criminal history category of III, and guideline range of 15 to 21 months. It also noted that the government opposed a reduction for acceptance of responsibility and Paulino sought a downward variance. Paulino argued that, even though the reduction was warranted and the guideline range of 15 to 21 months was "technically accurate," a sentence within the guideline range would be unreasonable.

The court asked Paulino what an appropriate sentence would be, stating, "she's got to do a lot more time because she didn't show up and it was contemptuous of the [c]ourt . . . . Otherwise, it's not fair for the people who do show up." The court further stated that in sentencing Paulino, it wanted to be consistent with other judges and his own prior decisions:

> The problem, of course, is -- and I saw that Judge Martinez gave 18 months; Judge Middlebrooks, six months; Judge Cohn, three months; Judge Ungaro, six months; Judge Cooke, which is important, 18 months; Judge Graham, three months; Judge Scola, six months and two months; Judge Zloch, 21 months and one day, and also perhaps important, Judge Moreno, 10 months, 24 months, and 16 months. See, what that tells me -- and I think it is very good, by the way -- is that it's all over the place, which means it depends on the reason, depends on the length of when she has absconded, depends on what she has done in the meantime. It depends on a lot of those things and the variables are great. It's still important, but they're just great. I like trying to be consistent with other judges in the same district. I probably have given up trying to be consistent with judges in other places because of our geographic differences in the United States which we don't really try to recognize, but it's true. There are

differences among judges, but I should definitely be consistent with myself. That's the easier one.

Paulino requested six months, to which the court responded, "That's so lenient. That's even more lenient than the three sentences that I've given to totally different people for the same thing." The court also noted that, in imposing a 16-month sentence to a defendant who was a fugitive for 16 years and had an underlying 87-month sentence, it had considered the fact that the defendant had fled to Haiti, with its challenging weather conditions and poverty, as compared to Paulino's experience in Boston, where "she's had a good life with her son."

When Paulino asserted that she had made extraordinary sacrifices for her son, the court stated that she had at least been free with him, and her son appeared to be well taken care of at the present. The court also noted that Paulino's sentence for aggravated identity theft was slightly above the mandatory minimum and at the bottom of the guideline range. The court asked whether Paulino would return to the United States after she was deported, and she stated that she would likely arrange for her son to visit her in the Dominican Republic.

After the defendant's allocution, the court reiterated that it had considered the PSI and letters attached to Paulino's motion and stated that, although family was an important institution and it was glad that her son was doing better, her actions had consequences. The court sentenced Paulino to 24 months' imprisonment followed by 2 years of supervised release and removal to the

5

Dominican Republic, concluding that the sentence was reasonable because she had received a shorter sentence for her conviction for aggravated identity theft, absconded for six years in the United States, and used a false name after absconding.

Paulino "object[ed] to the sentence."[1]  The government moved to dismiss Count 1 of the indictment, which the court granted.  This appeal followed.

## II. Standard of Review

We review the substantive reasonableness of a sentence for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  A district court imposes a substantively unreasonable sentence "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Suarez*, 893 F.3d 1330, 1337 (11th Cir. 2018).

A defendant's claim that the sentence imposed is procedurally unreasonable is reviewed for plain error if it was not raised at the district court.  *See United*

---

[1] Given the nature of the Paulino's arguments at sentencing, we interpret this objection as one to the substantive reasonableness of the sentence.  However, we find that Paulino did not object to the procedural reasonableness of the sentence.  *See United States v. Carpenter*, 803 F.3d 1224, 1238 (11th Cir. 2015) (reviewing arguments for plain error where objection was to the "substantive and procedural reasonableness" of the sentence without additional specificity).

*States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017). Plain error review requires a showing that the district court erred, its error was plain, it affected the defendant's substantial rights, and it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*. Here, Paulino failed to object to the procedural reasonableness of the sentence so we review for plain error.

The imposition of a term of supervised release is ordinarily reviewed for an abuse of discretion, but when the defendant fails to object—or to clearly state the grounds for an objection—in the district court, plain error review applies. *United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). The party challenging the sentence bears the burden of establishing that the district court considered an improper factor. *United States v. Williams*, 456 F.3d 1353, 1362 (11th Cir. 2006), *abrogated on other grounds by Kimbrough v. United* States, 552 U.S. 85 (2007).

## III. Discussion

### A. Procedural Reasonableness

In considering whether a sentence is procedurally reasonable, we must "ensure that the district court committed no significant procedural error" at

sentencing, such as by "failing to adequately explain the chosen sentence." *Gall*, 552 U.S. 38, 51 (2007). While a court must consider the §3553 factors, "[t]he district court need not 'explicitly articulate that it ha[s] considered the § 3553(a) factors' and need not discuss each factor." *United States v. Flores*, 572 F.3d 1254, 1270 (11th Cir. 2009) (quoting *United States v. Dorman*, 488 F.3d 936, 944 (11th Cir. 2007)).[2]

Paulino argues that her sentence is procedurally unreasonable because the district court did not consider the § 3553(a) factors and did not explain how its sentence complied with those factors. Upon a review of the record, we find that the district court did not err, let alone plainly err. A court does not have to state explicitly that it is considering the § 3553(a) factors for the record to reflect that the court did, in fact, do so. *See United States v. Dorman*, 488 F.3d 936, 944 (11th Cir. 2007) ("Despite the district court's failure to explicitly articulate that it had considered the § 3553(a) factors, by virtue of the court's consideration of [the defendant]'s objections and his motion for a downward departure, the court did, in

---

[2] Section 3553(a) mandates that the district court "impose a sentence sufficient, but not greater than necessary," to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). In addition, the court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guideline sentencing range; (4) any pertinent policy statements; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution to any victims. *Id*. § 3553(a)(1), (3)–(7).

fact, consider a number of the sentencing factors.").  Here, the district court stated that it considered the PSI, the letters submitted by the defense, and Paulino's written argument for a downward variance.  The district court also engaged Paulino's counsel in a lengthy conversation about the nature of Paulino's offense, her family situation, the result of a lengthy imprisonment, and the differences between Paulino's situation and other defendants the court had sentenced.  The court, in discussing the appropriate sentence for criminal contempt, explicitly noted that other courts had sentences "all over the place" which meant the court should consider "the reason" for the contempt, the "length of when she has absconded," and "what she has done in the meantime."  The record thus clearly reflects that the court considered the § 3553(a) factors.

B.  Substantive Reasonableness

Substantive reasonableness is reviewed in light of the totality of the circumstances and the purposes described in 18 U.S.C. § 3553(a).  *Alberts*, 859 F.3d at 985.  We will defer to the district court's judgment in weighing the § 3553(a) factors unless the court has made "a clear error of judgment" and imposed "a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (quoting *United States v. McBride*, 511 F.3d 1293, 1297–98 (11th Cir. 2007)).

9

Paulino contends that the district court imposed a substantively unreasonable sentence because it (1) failed to properly weigh the § 3553(a) factors, and (2) was inconsistent with other sentences imposed for similar conduct.  We find no "clear error of judgment" in the district court's weighing of the factors.  Although Paulino had her son's interests in mind when she fled her initial sentence, the district court was skeptical that it would take six years to secure medical treatment and care for her son in the U.S.  The district court was well within its discretion to consider the life Paulino lived in the U.S. in between her absoncsion in 2013 and her re-arrest in 2018.  We also echo the court's observation that allowing Paulino to escape punishment for failing to surrender is simply unfair to other defendants who comply with the terms of their surrender.  There was no abuse of discretion here.

We also find that Paulino has not met her burden to show that her sentence was so disproportionate to similarly situated defendants as to be unreasonable. Paulino directs us to the sentencing memorandum she filed in which she lists 20 cases where defendants were convicted of failing to appear or fleeing sentences. However, those sentences cover quite a broad range of crimes and terms of imprisonment.[3]  Further, there is no information in the record that shows the

---

[3] For example, compare *United States v. Michael Casey*, 14-cr-20619-KMM, where a defendant fled to Mexico for 4 years and was sentenced to 24 months' imprisonment, to *United States v. Kathia Farfan*, Case No. 04-cr-60238-WJZ, where a defendant who was a fugitive for over 14 years was sentenced to 1 day of imprisonment for failure to appear, to be served consecutively with a 144-month sentence for cocaine distribution.

10

circumstances of those defendants' actions except for the cases explicitly discussed at sentencing which the district court found were *not* parallel situations. The sentence was not substantively unreasonable.

## C. Supervised Release

Section 3583 of Title 18 provides that "[t]he court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). Paulino argues that the language of the statutes does not authorize a court to impose supervised release for a contempt crime because of our circuit precedent on the issue. In *United States v. Cohn*, we considered whether to classify criminal contempt under § 401 as a felony or misdemeanor offense. 586 F.3d 844, 845 (11th Cir. 2009). We determined that uniformly classifying criminal contempt as a felony or misdemeanor "would be inconsistent with the breadth of § 401 and appropriate sentences for its violation." *Id.* at 848. We also stated that it would be an arduous task to individually classify each type of conduct that constitutes criminal contempt. *Id.* Given the nature of § 401, as well as supporting Supreme Court and circuit precedent,[4] we concluded

---

[4] E.g., *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (referring to criminal contempt as "an offense sui generis"); *United States v. Holmes*, 822 F.2d 481, 493 (5th Cir.1987) ("[T]he Supreme Court has never characterized contempt as either a felony or a misdemeanor, but rather has described it as 'an offense sui generis.'").

11

that criminal contempt is properly categorized as a *sui generis* offense. *Id.* at 848–49.

Our holding in *Cohn* does not overcome the plain error review Paulino faces. *Cohn* did not "directly resolve" the question of whether a court is authorized to impose supervised release for a *sui generis* crime. *Lejarde-Rada*, 319 F.3d at 1291. To the contrary, *Cohn* emphasized the flexibility district courts should have in sentencing defendants for contempt. *See* 586 F.3d at 848. And, in a footnote in *Cohn*, we described types of sentences that a court may wish to impose for criminal contempt, including a "lengthy term of supervised release." *Id*. n.9. We also find that the plain text of the statute does not on its face prohibit courts from imposing supervised release following a term of imprisonment for contempt. 18 U.S.C. § 3583. The district court did not plainly err.

**AFFIRMED.**